474 So.2d 966 (1985)
Charles TURNER
v.
WINN DIXIE LOUISIANA, INC.
No. 85-CA-141.
Court of Appeal of Louisiana, Fifth Circuit.
July 8, 1985.
Rehearing Denied September 17, 1985.
Writ Denied November 15, 1985.
*967 T. Peter Breslin, Gauthier, Murphy, Sherman, McCabe & Chehardy, Kenner, for plaintiff/appellee.
Dan R. Dorsey, Dorsey, Walker & Chisholm, River Ridge, for defendant/appellant.
Before KLIEBERT, BOWES and GAUDIN, JJ.
BOWES, Judge.
Defendant Winn Dixie has appealed a judgment of the trial court awarding plaintiff, Charles Turner, penalties and attorney's fees under La.R.S. 23:1361. We affirm as follows.
Charles Turner had been employed by Winn Dixie since 1968 as produce manager in one of its stores. In October, 1981, he injured his back while unloading a produce truck. Mr. Turner returned to work after a brief absence, and, in November, 1981, he reinjured his back in a similar fashion. He was treated by Dr. Claude Williams and released. In January, 1982, plaintiff, a member of the United States Air Force Reserves, applied to Winn Dixie for military leave in order to take a classroom training course in Illinois. The training course was conducted from January 14th through March 5, 1982. In his deposition and in testimony, plaintiff stated that his reasons for wanting to take the course were twofold: first, he wished to advance his training in the Reserves; and second, he felt that the time spent in Illinois would be recuperative in that he felt that his back would have time to heal.
After his return from training, Turner testified that he attempted to contact Danny Richardson, the supervisor of the store in which he had been employed. After several efforts, plaintiff finally got in touch with Mr. Ernest Hurst, the retail outlet superintendent. At their meeting, Turner informed Hurst that he was ready to return to work. However, he felt that he still had some problems, and wanted to get another physician's opinion. According to the plaintiff, "I wanted to make sure it wasn't something that I was doing that was causing it (the continuing problems), posture, or exercise whatever. This is why I wanted to see a doctor."
Turner told Hurst that he felt his problems were not serious, that he just wanted to be sure "that it wouldn't be something in the future that would cause any lack of mobility or anything."
Turner was emphatic that he gave this information to Hurst in person and that Hurst, being informed of plaintiff's wish to consult a physician and having previously scheduled Turner to return to work, then told the plaintiff that he could not return to work without a full and complete medical release. Hurst denied having met with or having spoken to Turner at this time at all. Instead, Hurst testified that he spoke to the plaintiff only once, on April 20th (coincidentally, the date on which suit was filed), and, by virtue of a letter dated April 27th, confirmed this conversation, at which time Hurst had given Turner until the next day to present medical documentation necessary to keep him on medical leave. In the April 27th letter, Hurst gave plaintiff until May 3rd to present the requisite medical information.
*968 Another letter in evidence verifies that plaintiff had then forwarded a statement from his physician (the statement released him for work, but restricted bending and heavy lifting). In response to this release, Hurst replied that Winn Dixie did not have any light duty jobs and placed Turner on medical leave. Turner did not request medical leave, nor did he sign the company leave form acquiescing to such leave.
Turner began receiving workmen's compensation in late May of 1982. On August 16, 1982, plaintiff's treating physician, Dr. Windsor Dennis, sent a letter to Mr. Rob Golus, the insurance adjuster handling Turner's compensation claim. The letter effectively releases Turner from medical treatment. On that same date, Mr. Bowers, the "Human Resources" Supervisor at Winn Dixie (himself under the supervision of Mr. Hurst) requested medical information from Turner relative to his ability to work. A second letter to Turner, dated September 2nd, was to the same effect. A third letter, dated September 10th, stated:
As result of your failure to contact the company or report for work following the expiration of your Leave of Absence on July 15, 1982, as outlined in my certified letter of August 16, 1982, your employment is hearby [sic] terminated as a "Quit without notice".
These last three letters were mailed to Turner after he had moved, and were not forwarded.
Bowers testified that he was directed by Hurst personally to terminate Turner.
La.R.S. 23:1361 declares:
A. No person, firm or corporation shall refuse to employ any applicant for employment because of such applicant having asserted a claim for worker's compensation benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Section shall require a person to employ an applicant who does not meet the qualifications of the position sought.
B. No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with a reasonable attorney's fee.
Thus, the trial court is obliged to make a judgment call as to the motives of the employer for discharging the employee. The court does so based on the facts presented into evidence in the trial of the matter. The present case involves the sub-issue of credibility of the witnesses testifying inasmuch as there was some conflict as to when Turner was notified that he would not be returning to work. The trial court evidently felt that Turner was deliberately prevented from resuming employment at the time he notified Hurst that he wanted to see a physician, i.e., that Hurst's initial action was retaliatory and therefore arbitrary.
It is clear that the trial court did not believe, as was contended by the defendant, that the executive offices of Winn Dixie, in the persons of Messrs. Bowers and Hurst, were unaware that the plaintiff had filed suit and had a pending claim for compensation. Correspondence from counsel for Turner was addressed, between March and September, to Rob Golus at the administrative offices of Winn Dixie, as well as to the attorney for Winn Dixie. We note that Winn Dixie was evidently duly served *969 as cited in the petition. Put another way, the trial court obviously was not persuaded that, as between Winn Dixie, its attorney, and its agent (Golus), one hand did not know what the other was doing. We cannot say that this conclusion was manifestly erroneous. To determine otherwise is to conclude that Hurst and Bowers were working, as it were, in a vacuum. The trial court found otherwise, and such is its function as the trier of fact.[1]
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.

Canter v. Koehring Co., 283 So.2d 716 (La.1973) See also Elmwood Plantation, Inc. v. Ruud Water Heater, et al, 435 So.2d 507 (La.App.5th Cir.1983)
The finding that Bowers and Hurst were aware of plaintiff's lawsuit places Winn Dixie squarely within the confines of R.S. 23:1361. The trial judge's reasonable inference that Turner was discharged because of his compensation claim is supported by the record. The letters from the defendant to the plaintiff show that plaintiff was ostensibly terminated for failure to report to the company, and failure to keep the company apprised of his physical condition. As demonstrated above, plaintiff was in contact with Winn Dixie through its agent Golus and its attorney, and Winn Dixie was supplied with medical information on Turner as late as August of 1982. Therefore, the court could fairly conclude that such could not be the reasons for dismissal, with which finding we concur.
Finally, the defendant asserts that the damages awarded to plaintiff were excessive. The trial court gave Turner $20,000, the equivalent of one year's salary at Winn Dixie, and $5,000 in attorney's fees. Defendant avers that any award granted to plaintiff should be reduced according to the salary plaintiff earned at other employment. Subsequent to the filing of the lawsuit, plaintiff began working at another job for approximately the same salary as he had previously earned at Winn Dixie. He began new employment in November of 1982.
We do not find, nor does defendant cite, any authority for the contention that Winn Dixie has presented. Rather, it is settled that in actions such as these, the fact that an employee may have earnings elsewhere does not preclude his rights to recover his salary.
In Carlson v. Ewing, 219 La. 961, 54 So.2d 414 (1951), the Supreme Court considered the issue of an employee discharged without cause under La.C.C. Art. 2749:[2]

*970 We have repeatedly held that the fact that such employee may elsewhere earn money during the unexpired term of the contract has no bearing on his right to recover his salary for the said unexpired term.
The Third Circuit, in Wiley v. Missouri Pacific Railroad Company, 430 So.2d 1016 (La.App. 3rd Cir.1982), in a well-reasoned discussion of the historical development of the employment relationship leading to actions for wrongful discharge, holds that the seminal Louisiana law affording protection from unjust discharge is Art. 2749. As we understand Wiley, R.S. 23:1361 is derived from, and probably a refinement of, 2749, in that it specifically prohibits discharge for prosecution of a workmen's compensation claim. In other words, an assertion of a claim for workmen's compensation is not good cause for discharge. Wiley, supra. We agree with this analysis, recognizing that the only expressed limitation of 23:1361 is that a discharged employee is limited to recovery of one year's salary. The legislature has chosen to place such a limitation in this particular matter; we are unable to perceive any intent on its part, however, to penalize an industrious claimant by crediting the offending employer for the plaintiff's initiative.
As to the amount of attorney's fees assessed by the court, absent clear abuse, the amount will not be disturbed.
In considering reasonable attorney fees the Court must first consider these factors in awarding attorney fees, namely: (1) the ultimate result obtained; (2) responsibility incurred; (3) the importance of the litigation; (4) the amount involved; (5) the extent and character of the labor performed; (6) the legal knowledge and attainment and skill of the attorney; (7) the number of appearances made; (8) the intricacies of the facts and law involved; (9) the diligence and skill of counsel; and (10) the Court's own knowledge.

State of Louisiana, Dept. of Transportation & Development v. Tynes, 433 So.2d 809 (La.App. 1st Cir.1983)
Judge Wicker, the trial judge in this matter, is an able and experienced trial judge. His broad discretion in fixing attorney's fees is entitled to great weight and his reasons indicate he considered the above jurisprudence. We find no abuse of discretion in the present case.
For the foregoing reasons, the judgment of the trial court is affirmed. Defendant is assessed all costs of this appeal.
AFFIRMED.
NOTES
[1] In connection with the trial court's finding that plaintiff was discharged because of his compensation suit, we note with interest that included in the record is a list of employees who filed claims for compensation from Winn Dixie. Of the 25 employees so listed, 17 were discharged for various reasons subsequent to having filed their claims. While the trial judge stated that he was trying this case based on its facts alone (Tr. p. 75), nevertheless this list supports the ultimate conclusion of the court.
[2] Art. 2749. Liability for dismissal of laborer without cause

Art. 2749. If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.