532 So.2d 337 (1988)
Charles R. LAYSSARD, Plaintiff-Appellee,
v.
PROCTOR & GAMBLE MANUFACTURING COMPANY, Defendant-Appellant.
No. 87-759.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
*338 Michael W. Shannon, Alexandria, for plaintiff-appellee.
Bolen & Erwin, James A. Bolen, Alexandria, for defendant-appellant.
Before DOUCET, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
Plaintiff, Charles Layssard, filed suit against his former employer, The Proctor and Gamble Manufacturing Company (Proctor and Gamble). Layssard's petition claimed that Proctor and Gamble wrongfully discharged him from employment due to his having filed suit for worker's compensation benefits against Proctor and Gamble. After a trial on the merits, the trial court held in favor of the plaintiff finding that he had in fact been wrongfully discharged due to his having previously filed a worker's compensation claim. The court awarded plaintiff one year's salary, legal interest and attorney's fees as damages. Defendant has now suspensively appealed.[1]

FACTS
Plaintiff began working for Proctor and Gamble at its plant in Pineville in 1969, *339 making $3.00 per hour. He gradually moved up the employment ladder at Proctor and Gamble receiving promotions and pay raises periodically throughout his career. At the time plaintiff was terminated from employment in February, 1985, he was working as a technician at the plant and was making over $700 per week.
Plaintiff injured his knee while at work on May 31, 1983. This injury required surgery and plaintiff did not report back to work until July 18, 1983. He was unable to perform some of the tasks required by his supervisor (the two apparently argued about plaintiff's ability to work). Plaintiff was instructed by his treating physician to remain home for two more weeks. The physician sent a letter to defendant's company doctor stating that plaintiff had said that his supervisor "cursed at" him and had required plaintiff to perform job tasks beyond the limits imposed by the doctor. The letter further conveyed the order that plaintiff remain off of work for two weeks.
On August 8, 1983, plaintiff returned to work. He was then required to meet with his supervisor to discuss the letter sent by the physician. He was given a two week disciplinary layoff due to the alleged untruths that he told the doctor. Plaintiff returned to work in September, 1983 and on October 20, 1983 he was summoned for a "performance review" by his supervisor. His performance review was described by defendant as "less than satisfactory." Plaintiff had never received a performance review prior to his accident nor had he ever had reason to believe that his job performance was less than satisfactory. Defendant claims that although the review was not administered to (discussed with) plaintiff until October, 1983, it was actually prepared in May, 1983, prior to his accident.[2] Although the review was less than satisfactory, no disciplinary action was taken.
Plaintiff continued working until April 4, 1984, when he injured his elbow at work. The injury did not cause plaintiff to miss any work at this time, however, it later was surgically repaired on January 11, 1985. On August 23, 1984 plaintiff filed a petition for worker's compensation due to the May, 1983 knee injury. Soon afterwards (October, 1984), plaintiff underwent another performance review.[3] This review was administered to plaintiff and showed his work to be "unsatisfactory," but no disciplinary action was taken.
Plaintiff continued working for defendant until his surgery in January, 1985. At that time he underwent surgery to repair his elbow and also for an inguinal hernia. Plaintiff claimed that hernia was due to an on-the-job injury, but defendant disputed this as he had never previously reported such an injury. On January 15, 1985, defendant advised plaintiff that his hernia surgery was not covered by worker's compensation benefits. Defendant also advised plaintiff that the physician had informed it that plaintiff would only have to miss one day of work due to the elbow surgery[4] and thus that was the only day for which he would receive worker's compensation benefits. Plaintiff obtained a written excuse saying that he could not return to work until January 23, 1985, but the excuse had to be returned because it was not authorized by the doctor. The excuse was issued by the doctor's receptionist who believed that it was authorized. Defendant hired a private investigator to investigate the matter. Defendant felt that plaintiff had fraudulently induced the receptionist to issue the excuse.
On February 7, 1985, plaintiff's worker's compensation trial for his knee injury was held. The court found plaintiff to be permanently and partially disabled and entitled to 450 weeks of worker's compensation benefits. 490 So.2d 1172. On February *340 18, 1985, defendant held a conference with plaintiff asking him to explain the issuance of the 5 day excuse without authorization of the doctor. Defendant did not find plaintiff's explanation to be plausible and he was given a disciplinary layoff. After further consideration, defendant decided to terminate plaintiff's employment on February 22, 1985.[5]

WRONGFUL TERMINATION
In its "Reasons for Judgment," the trial court stated:
"This matter is before the court on a petition by Charles Layssard, in which he seeks to invoke the provisions of La.R.S. 23:1361 which reads as follows:
§ 1361. Unlawful discrimination prohibited
A. `No person, firm or corporation shall refuse to employ any applicant for employment because of such applicant having asserted a claim for worker's compensation benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Section shall require a person to employ an applicant who does not meet the qualifications of the position sought.
B. No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with a reasonable attorney's fee.'
Mr. Layssard was employed by Proctor and Gamble, Inc. in 1969 and continued his employment until he was terminated in 1984. [1985] His termination followed 2 on the job injuries and 2 disputes over the amount of compensation owed. One of these disputes resulted in the plaintiff filing a lawsuit against his employer for worker's compensation benefits. He was fired between the time of the filing of the lawsuit and the time he was ultimately successful in that lawsuit. The defendant in this matter is a self insurer.
The totality of the evidence in this matter convinces the court beyond any doubt that Mr. Layssard was a dependable and productive employee who received regular promotions and pay increases from the time of his employment by the defendant in 1969 until he was injured in 1983. Following his injury in 1983, he was again injured in May [April] of 1984. Both of these injuries were clearly manifested by obvious and apparent objective symptoms. Both injuries required periods of hospitalization and major surgical procedures that had to be performed by orthopedic specialists in the operating room of a general hospital. Following his 1983 injury he was disciplined for `continued poor work performance' the details of which were not placed before the court. Following his 1984 injury he was discharged from his employment for the stated reasons of (1) `continued poor work performance' and (2) `misrepresentation of facts concerning a worker's compensation case.'
This court finds as a matter of fact that the plaintiff, a 15 year employee, was terminated because he filed a worker's compensation suit and that the stated reasons are patently false and were *341 after-thoughts to justify the termination. The court specifically finds that both of the work performance reports on the plaintiff (P-10 and P-11) were prepared after Mr. Layssard made his first worker's compensation claim and after he told Dr. Gamberg that his supervisor, Mr. Lemoine, had cursed him, and the marginal date of 5/83 was not the date the document was prepared.
The facts surrounding the termination of Mr. Layssard bring him within the protection of La.R.S. 23:1361(B) and subjects the discriminating employer to the penalties provided for in R.S. 23:1361(C).
There will therefore be judgment herein in favor of the plaintiff in the amount of one year's salary, computed at $709.00 per week for 52 weeks, together with legal interest thereon, from date of judicial demand until paid and for all costs of this proceeding."
Defendant contends that the trial court erred in finding that plaintiff proved by a preponderance of the evidence that he was discharged because he filed a suit for worker's compensation benefits. Defendant further claims that the factual findings of the trial court were inconsistent with the evidence presented and that the court seemed to find plaintiff to be the only credible witness who testified.
First, defendant points out that the court found that plaintiff "received regular promotions and pay increases" from 1969 through 1983. Defendant claims that although plaintiff did continue to receive pay raises, his last promotion based upon skill was in December, 1980. Second, defendant questions the trial court's finding that plaintiff underwent "major" surgery for his two injuries. Defendant argues that the elbow surgery to remove bone fragments should not have been deemed to be major surgery. Third, defendant claims that the trial court's finding that plaintiff's performance review of 1983 was prepared after plaintiff injured his knee was erroneous. Defendant claims that although the review was administered in October, 1983, it was actually prepared in May, 1983 and is so dated. (The trial court apparently believed plaintiff's contention that the defendant subsequently went back and added the May date to the report). Finally, defendant contends that the trial court could not have accurately found that the performance evaluations were done in response to plaintiff's injuries because one such evaluation was done prior to plaintiff's filing of his worker's compensation suit.
After reviewing the record, we conclude that the trial court's findings were not manifestly erroneous. Defendant's contention that plaintiff did not receive promotions and pay increases between 1980 and 1983, but simply received pay increases during that period (and not any promotions) hardly makes the trial court's findings invalid. Nor is the trial court's use of the term "major" in describing plaintiff's elbow injury a fatal flaw in its judgment. As to the trial court's finding that defendant actually evaluated plaintiff after his injury, we find that such a finding by the trier of fact could have been reasonably made based upon the record.[6]
Finally, defendant's contention that the trial court erroneously found that the first evaluation was done after plaintiff's filing of a worker's compensation suit is of no moment. The trial court stated that the reviews "were prepared after Mr. Layssard made his first worker's compensation claim..." Although Layssard did not file suit until April 23, 1984, he was injured on May 31, 1983. Defendant paid worker's compensation benefits to plaintiff from the date of his injury, May 31, 1983, until September 10, 1983. Whether these payments were voluntary is unclear from the record. Based upon these facts, although it is unclear *342 from the record if the first performance review was prepared after plaintiff's "claim," it is clear that the trial court found that the review was prepared after plaintiff's injury and after his being paid worker's compensation benefits by defendant. We believe that even though the trial court may have erred in stating that the reviews were done after plaintiff's "claim," its reasoning that the reviews were done in response to plaintiff's injury and his receipt of worker's compensation benefits is correct.
We will not disturb the factual findings of the trial court based upon its reasonable evaluation of credibility in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). In the present matter, we hold that the trial court's finding that defendant was terminated from employment based upon his having filed a worker's compensation suit is not manifestly erroneous.

EXCLUDED TESTIMONY
Defendant next asserts that the trial court erroneously sustained objections by plaintiff preventing plaintiff's job supervisor, Gerald Lemoine, from stating his opinion of plaintiff's job performance. Defendant also asserts that the trial court erroneously excluded the testimony of Rosemary Futrell (the receptionist) concerning her opinion of how defendant appeared when he returned the invalid doctor's excuse to her.
During defendant's direct examination of Gerald Lemoine, its counsel made several attempts to have Lemoine testify regarding his opinion of plaintiff's attitude and work performance. Each attempt was met with an objection by plaintiff's counsel that was sustained by the trial court. One such exchange went as follows:
"MR. SHANNON: Your Honor, I would object to his opinion.
MS. DELOACH: Your Honor, I would state for the record that Mr. Lemoine has stated that as part of his job duty he was called upon to make observations and reach conclusions and evaluate a person's performance and their job attitude, and that this line of questioning is certainly within his realm as the supervisor of Mr. Layssard.
THE COURT: I'm not bound by what Mr. Lemoine may have determined. The Court does not abdicate its responsibility to decide. One of the issues in this case is whether or not.... as a matter of fact, the crucial issue in this case is whether or not Mr. Layssard was terminated for proper cause. And one of the stated reasons for his termination was continued poor work performance. Now I do not intend to abdicate my responsibility to make that determination as what continued poor work perform[ance].... Mr. Lemoine is not going to make that decision for me. I'm going to make that decision. If Mr. Lemoine wants to help me make a decision as to whether or not Mr. Layssard was terminated for continued poor work performance he's going to have to tell me what that continued poor work performance was. And then I'll decide whether or not it was poor work performance. So the objection is sustained.
MS. DELOACH: That is what I'm trying to do. I'm sorry."
After more unsuccessful attempts to elicit Lemoine's opinion, defense counsel discussed the evaluation form prepared by Lemoine regarding plaintiff's work performance. Through this device, Lemoine was able to testify as to each statement made regarding plaintiff's job performance and the basis for each statement. Defense counsel then again made several unsuccessful attempts to have Lemoine testify as to his opinion and the conclusions he made regarding plaintiff's job performance capabilities.
In its brief, defendant points out that lay witnesses are normally allowed to testify regarding opinions based upon rational perceptions of facts perceived by the witness, citing Lancon v. Vallot, 459 So.2d 1360 (La.App.3d Cir.1984). Defendant argues that Lemoine was in the position to form an opinion as to plaintiff's work performance *343 and should have been allowed to convey that opinion to the court.
The trial court stated that it was its duty to make conclusions regarding plaintiff's work performance. It stated that Lemoine could help to persuade the court that plaintiff performed his job poorly by stating a factual basis for that determination, but that it would not accept Lemoine's conclusion or opinion that plaintiff performed his job poorly. Lemoine gave a detailed summary of plaintiff's job performance evaluation and the reasons that statements on the evaluation were made. Because Lemoine was allowed to elaborate on the evaluation of plaintiff's job performance, we hold that the trial court's decision to exclude his testimony regarding conclusions as to his job performance, if error, was harmless error.
Defendant next argues that Rosemary Futrell should have been allowed to testify as to how plaintiff appeared when she told him to return the excuse that she had given to the plaintiff. Again defendant cites Lancon. Defense counsel questioned Futrell regarding the circumstances of the issuance of plaintiff's work excuse. Defense counsel then asked:
"Q. How did Mr. Layssard appear to you when you told him you had to have the note back?
MR. SHANNON: Your Honor, I would object to that, how he appeared. She's going to reach some conclusions that would ... I just don't think it proper.
MS. DELOACH: Your Honor, I will rephrase the question, but I believe it's within her realm to describe what she observed."
Defense counsel then requestioned Futrell, but the question and answer were stricken from the record. The court stated that Futrell's response was a conclusion. The decision by the trial court to withhold this conclusion, again if erroneous, was certainly harmless error.

ATTORNEY'S FEES
The trial court awarded plaintiff $7,500 in attorney's fees. Defendant contends that no evidence outside of the record was submitted to the court to support plaintiff's claim for attorney's fees and that the record does not support such a large award.
The trial court is vested with much discretion in fixing an award for attorney's fees and any such award should not be modified on appeal absent a showing of abuse of discretion. See Moreau v. Houston General Insurance Co., 386 So.2d 151, 155 (La.App.3d Cir.1980). We agree with the trial court's award and do not find it to be an abuse of discretion. In this respect we adopt the trial court's reasoning:
"Mr. Layssard's attorney is likewise entitled to compensation under the provisions of La.R.S. 23:1361(C). The court notes that the claim of the plaintiff has been met with resistance to the utmost by an outstanding team of defense lawyers from an outstanding law firm. The plaintiffs [sic] attorney has had to meet exceptions of vagueness, motions to strike and motions for summary judgment.
He has had to research, write and submit memoranda on all these pretrial motions. He has had to spend many hours with his client in preparation for the various phases of this litigation. He has had to prepare for and attend numerous depositions of both expert and lay witnesses. He has had to review voluminous medical records. He has had to attend pretrial conferences and submit memoranda in compliance with the court's pretrial orders. Lastly, plaintiff's counsel has had to try this case for 2 days in a distant city.
The record is clear that plaintiff's counsel has spent at least 100 hours on this case. The court further notes that this is litigation of major significance, that it involves a substantial monetary sum, it involves a complicated factual situation, and astute counsel for the defendant has made it a complicated legal problem. Against all these odds the plaintiff has prevailed in this litigation. Counsel for plaintiff is an experienced and competent attorney whose services deserve compensation at the rate of $75.00 per hour. The attorney fee will *344 therefore be fixed at $75.00 per hour for 100 hours for a total of Seven Thousand, Five Hundred and 00/100 ($7,500.00) dollars."
Therefore, we affirm the opinion of the trial court in all respects. Costs of this appeal are taxed to defendant.
AFFIRMED.
NOTES
[1] Defendant assigns as errors by the trial court:

"(1) The Trial Court manifestly erred in finding plaintiff proved by a preponderance of the evidence that his employment was terminated as a result of his filling suit for worker's compensation benefits for the injuries sustained in May, 1983.
(2) The Trial Court manifestly erred in ruling Gerald Lemoine could not give opinion evidence regarding plaintiff's work performance.
(3) The Trial Court erred in refusing to allow Rosemary Futrell to testify as to what she observed of plaintiff's behavior.
(4) The Trial Court clearly abused its much discretion in awarding counsel for plaintiff Seven Thousand Five Hundred and no/100 ($7,500.00) Dollars for attorney's fees."
[2] Defendant claims that normally these reviews are administered soon after being prepared, but due to plaintiff's injury and time that he took off for National Guard duty, his could not be administered until October, 1983.
[3] Defendant contends that at the time this review was prepared it did not know that plaintiff had filed a worker's compensation claim.
[4] The letter from the doctor states that plaintiff would be able to return "to a desk type, sedentary type job."
[5] Although the trial on plaintiff's worker's compensation claim was held about two weeks prior to his termination, judgment in his favor was apparently not made until after his termination.
[6] One such fact that could have been taken into account by the trial court is that the 1984 performance review was prepared 10/25/84. The 1983 report was "administered" to the plaintiff on 10/20/83, although it was claimed to have been prepared in 5/83, prior to his accident. The trial court would not have been unreasonable in concluding that such reports would be prepared annually (every October) and thus concluding that the "5/83" date on the first performance review was not accurate.