537 So.2d 780 (1989)
William LEWIS, Plaintiff-Appellant,
v.
WILLAMETTE INDUSTRIES, INC., Defendant-Appellee.
No. 20213-CA.
Court of Appeal of Louisiana, Second Circuit.
January 18, 1989.
Writ Denied March 27, 1989.
*781 Culpepper, Teat, Caldwell & Avery by Jimmy C. Teat, Jonesboro, for plaintiff-appellant.
McGlinchey, Stafford, Mintz, Cellini & Lang, P.C., New Orleans by Robert B. Mitchell and Steven J. Heath, for defendant-appellee.
Before HALL, MARVIN, and FRED W. JONES, JJ.
MARVIN, Judge.
In this action against an employer for statutory penalties and attorney fees under LRS 23:1361, plaintiff, who alleged the statutorily prohibited "retaliatory" discharge, appeals a judgment rejecting his demands.
Following our remand and after a trial on the merits, the trial court concluded that plaintiff was discharged because he was partially disabled from working and not because he had asserted a claim against his employer for worker's compensation benefits. See Lewis v. Willamette Industries, Inc., 499 So.2d 506 (La.App.2d Cir.1986), for our remand.
The trial court's conclusion presents a factual issue. We find no clear error and affirm the judgment.

FACTS
William Lewis worked at Willamette's plywood plant taking and grading sheets of veneer from a conveyor and placing them onto buggies. A sheet of veneer weighing about 12 pounds was conveyed to him every 6-8 seconds during his working time and required repetitive and dexterous manual efforts of plaintiff.
On November 6, 1982, a splinter pierced his glove and punctured his right index finger. He underwent two surgeries to have the splinter removed and was released to return to work in late 1982. After working regularly during 1983, his finger swelled and became painful in mid-September. He then sought further medical attention from several doctors and twice attempted to work in November 1983 but could not do so for more than one day at a time. Willamette, self-insured under the w.c. law, resumed paying him benefits and paid his medical expenses through December 1983 when one or more of the seven *782 doctors plaintiff had seen released him to return to work about January 1, 1984.
Lewis last attempted to work on November 19, 1983. He sought treatment from a physician, Dr. McAlister, on November 23, who took x-rays and prescribed Nalfon for the pain and swelling Lewis suffered. Lewis brought his w.c. action March 1, 1984, which was answered by Willamette with a general denial. Contrary to reports of other doctors that Lewis was able to return to work, Dr. McAlister reported in April 1984:
The patient continues to have some soreness in the area of his MP joint. He states he attempted to fish and he had difficulty doing this. He states he does fairly well as long as he continues on his Nalfon. He also states he saw Dr. Cline since his last visit and he stated that there was no indication to do any further treatment.
I have discussed entirely with the patient the possibility of further surgery which I think has a very poor chance of relieving it. I feel he will have a 20% disability of his index finger. I do not feel he can do fine repetitive work or heavy labor with his hand. I will check him back in two months.
Dr. McAlister later explained that 20 percent disability of the index finger produces a four percent disability of Lewis's hand. Dr. McAlister did not release Lewis to go back to work.
The manager of Willamette's worker's compensation department testified the company began settlement negotiations after receiving Dr. McAlister's report because the only type of work available for Lewis was repetitive work or heavy manual labor, which Dr. McAlister said Lewis was physically unable to do. Willamette, of course, was aware that Lewis had been unable to work because of pain in his hand in November 1983, and that other doctors had thereafter released him to return to work.
Lewis's compensation claim was settled for $4,500 in October 1984. The joint settlement petition was signed by Willamette's attorney on October 18 and by Lewis and his attorney on October 22, the day the court approved the settlement.
On October 24, 1984, Lewis went to the plant to inquire about returning to work. He was told that he had "quit" because he was "physically unable to work," according to a written termination notice dated October 18, the day Willamette's attorney signed the settlement. Willamette did not notify Lewis of his termination before his October 24 visit to the plant.
Lewis filed a grievance with the local union on October 24 because the company did not give him three written warnings before discharging him, as required by the union contract. Willamette's personnel manager and labor relations director, Wayne Parker, answered the grievance on November 30, 1984:
William Lewis was not discharged. He quit his employment voluntarily stating that he was physically unable to work. Attached is a copy of a page taken from workers comp joint petition where aggrieved employee alleges that he is totally and permanent[ly] disabled. Grievance denied.
Lewis never told anyone at the plant that he was quitting his job. According to Willamette's claims manager, it was customary for Willamette's records to show that an employee "quit" when he was no longer able to do the work.
Notwithstanding the custom and its initial labeling of Lewis's termination as voluntary, Willamette does not dispute the fact that Lewis was discharged involuntarily. In response to this action by Lewis, Willamette contends that Lewis was discharged because of his inability to work and not because he filed a compensation claim.

REASON FOR DISCHARGE
The controlling statute is LRS 23:1361(B):
No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter *783 shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
An employer cannot circumvent the statute by stretching the facts out of context or inventing an excuse for firing a compensation claimant. Ducote v. J.A. Jones Const. Co., 471 So.2d 704 (La.1985). The trial court must ascertain the employer's true reason or motive for firing the employee based on the facts presented at trial. Turner v. Winn Dixie Louisiana, Inc., 474 So.2d 966 (La.App. 5th Cir.1985), writ denied.
Although it has been noted that the employer will rarely tell the employee he is being fired for filing a compensation claim, the employee nevertheless bears the burden of proving, by a preponderance of the evidence, that he was discharged for that reason. Moore v. McDermott, Inc., 494 So.2d 1159 (La.1986).
Lewis testified he was "willing to try to work" when he went to the plant on October 24, 1984, but admitted Dr. McAlister had never released him from the work restrictions described in his April 1984 report.
Willamette's policy required a full medical release before allowing a once-injured employee to return to work. Willamette also showed that 85 percent of its employees who were paid w.c. eventually returned to work. Willamette does not allow a onceinjured employee to return to work unless he or she is physically able to do the work.
Flurry, the claims manager, and his supervisor, Parker, made the decision to terminate Lewis. They testified they did so solely because of his inability to perform available work, according to Dr. McAlister's assessment, and not because Lewis filed a worker's compensation claim.
The trial court found that Lewis did not carry his burden of proof. The court found that the only type of work available involved repetitive work or heavy physical labor, and that Lewis could not do either type of work according to the last medical report received by Willamette. Lewis offered no objective evidence to the contrary, but simply maintained his subjective desire to return to work on October 24.
The evidence fully supports the trial court's finding that the company discharged Lewis for the statutorily permissible reason that his injury prevented him from performing the duties of his employment. The record offers no basis for disturbing this finding on appeal. See and compare Ducote v. J.A. Jones Const. Co., supra, and Locksey v. Capitol Mfg. Co., 517 So.2d 1102 (La.App.3d Cir.1987), writ denied.
Lewis finds his termination suspect because it coincided in time with the settlement of his worker's compensation claim. Equally coincidental, however, is the fact that Lewis did not attempt to return to work after November 19, 1983, until a few days after he settled his permanent partial disability claim in October 1984, fully relying on Dr. McAlister's opinion of his physical limitations. Compare factually Rambin v. Louisiana Downs, Inc., 482 So.2d 916 (La.App.2d Cir.1986), writ denied.
The trial court did not, and we cannot, find or infer from the evidence that the company had a retaliatory motive or a contrived reason for discharging Lewis.

DECREE
At plaintiff's cost, the judgment is AFFIRMED.