781 So.2d 661 (2001)
Sandra NICHOLSON
v.
TRANSIT MANAGEMENT OF SOUTHEAST LOUISIANA, d/b/a R.T.A.
No. 2000-CA-0706.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 2001.
Writ Denied May 11, 2001.
*664 Joseph G. Albe, Metairie, LA, Counsel for Plaintiff/Appellee.
C. Theodore Alpaugh, III, Ira J. Rosenzweig, Smith Martin, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judges PLOTKIN, WALTZER, and TOBIAS.
PLOTKIN, Judge.
This is a tort claim by an employee against her employer for retaliatory discharge for asserting a workers' compensation claim. Defendant, Transit Management of Southeast Louisiana, Inc. ("TMSEL"), appeals a trial court judgment in favor of plaintiff, Sandra Nicholson, based on a finding that TMSEL discharged Ms. Nicholson because she asserted a workers' compensation claim, in violation of LSA-R.S. 23:1361. We amend the judgment and affirm as amended.

Facts
Ms. Nicholson worked for TMSEL from 1988 until her discharge on May 27, 1994, first as a streetcar operator, then as a bus driver. During her period of employment, Ms. Nicholson claims that she suffered two work-related injuries. The first injury occurred on September 22, 1991, when Ms. Nicholson injured her shoulder while pulling the trolley pull. Ms. Nicholson testified that she reported her injury to her supervisor and that her supervisor completed an accident report and helped her apply for workers' compensation benefits. As a result of the shoulder injury, Ms. Nicholson was unable to work from September 22, 1991, until June 8, 1992. Ms. Nicholson received workers' compensation benefits during that period. When she returned to work, Ms. Nicholson was transferred from her position as a streetcar operator to a position as a bus driver, where she would not be required to pull trolley pulls, on recommendation of the TMSEL company doctor. Ms. Nicholson's new supervisor at the Arabella bus station, Frank Echols, attempted to discharge Ms. Nicholson after she returned to work following the shoulder injury; however, his decision was reversed as a result of a grievance filed by Ms. Nicholson pursuant to TMSEL's contract with the Amalgamated Transit Union ("ATU").
Ms. Nicholson's second injury occurred on July 8, 1993, when she injured her knee while executing a hard braking procedure. Ms. Nicholson testified that she followed the same procedures that she followed after the first accident. She reported both *665 her injury and her desire to receive worker's compensation benefits to her supervisor, Mr. Echols, expecting that he would file an accident report and help her apply for workers' compensation benefits. Ms. Nicholson testified that instead of assisting her in applying for benefits, Mr. Echols told her that her injury was not compensable under workers' compensation because she did not fall. Apparently neither Mr. Echols nor Ms. Nicholson completed an accident report related to the incident. Nevertheless, Ms. Nicholson sought medical treatment, including surgery, for her knee injury, as a result of which she was unable to work from the date of the injury until May 23, 1994, when her doctor released her to return to work. Ms. Nicholson did not receive workers' compensation benefits during the time she was not working following the July 1993 injury.
Ms. Nicholson testified at trial that she took the "Return to Work" slip provided by her doctor to Diane Thornton, the run dispatch clerk on duty at TMSEL, sometime in the afternoon or evening of May 25, 1994. According to Ms. Nicholson, Ms. Thornton told her that she would give the slip to Mr. Echols and that Mr. Echols would call her. Mr. Echols testified that he received Ms. Nicholson's "Return to Work" slip, but that he did not call her because she had been told by Joseph Johnson, another run dispatch clerk, to come into the office to see Mr. Echols on May 26, 1994. However, Mr. Johnson testified that he never personally received the "Return to Work" slip from Ms. Nicholson; no one asked him at trial whether he told Ms. Nicholson to report to Mr. Echols on May 26, 1994.
According to Mr. Echols, when Ms. Nicholson failed to report to his office as instructed by Mr. Johnson on May 26, 1994, she was discharged effective May 27, 1994. The stated reason for her discharge was "insubordination." However, Mr. Echols failed to inform TMSEL's Human Resources Department of Ms. Nicholson's discharge until five days later. Mr. Echols testified that TMSEL allows employees to be "AWOL" (presumably "Absent Without Official Leave") for five days and that he was giving Ms. Nicholson that five-day AWOL period to report to work. He stated that he might have reconsidered his decision to discharge Ms. Nicholson had she come in during that five-day period and provided a reason for her failure to report on May 26, 1994 as instructed by Mr. Johnson. Ms. Nicholson was apparently never given official notice of the fact of her discharge, the date of her discharge, or the reason for her discharge. She testified that she learned of the discharge about three weeks after the fact when she was finally able to contact Mr. Echols by telephone.
On May 12, 1995, Ms. Nicholson filed suit against TMSEL for retaliatory discharge pursuant to LSA-R.S. 23:1361(B), relative to unlawful discharge for asserting a workers' compensation claim. At some point, Ms. Nicholson apparently also filed a formal claim seeking workers' compensation benefits for the period of time she was off work following her knee injury. Following a trial on the retaliatory discharge claim, judgment was entered in favor of Ms. Nicholson. TMSEL was ordered to pay Ms. Nicholson the statutory penalty of $18,500, Ms. Nicholson's salary for one year, plus attorney's fees of $8,000, costs, and judicial interest on all amounts from the date of judicial demand. The trial court stated oral reasons for judgment, as follows:
After hearing the testimony and reviewing the evidence in this case, the Court finds for the plaintiff, Sandra Nicholson, and against the defendant, *666 Transit Management of Southeast Louisiana doing business as RTA.
The Court finds that the plaintiff, Sandra Nicholson, established with a preponderance of the evidence that she was discharged from her job as a bus operator with TMSEL. The plaintiff states that she spoke to Diane Thornton and was told that the supervisor, Mr. Echols, would call her to schedule an appointment with the company manager to take care of other matters  the company doctor  and to take care of other matters before her return to work. The defendants never satisfactorily established to this Court their claim of-their claim that they told Ms. Nicholson to return to work on May 26th. Diane Thornton does not remember meeting with Ms. Nicholson. Mr. Echols said that Johnson told her, Mr. Johnson told the plaintiff to constant [sic] him. Mr. Johnson says that he didn't have that have [sic] conversation with the plaintiff. So no one established for certainty that she was instructed to return to work on May 26th, and the Court finds it doubtful that she was told that.
The Court finds that the failure to report to work on May 26th was not her failure to follow instruction of a supervisor. And the Court also notes that the defendant also attempted to fire Ms. Nicholson in 1991 after her return on a worker's comp claim.
The Court also notes that her worker's comp claim was filed after her discharge, but the Court feels that the company was aware of her claim before the filing of the official worker's comp claim.
TMSEL appeals, asserting three assignments of error, as follows:
1. The trial court committed legal error by determining that the plaintiff filed a worker's compensation claim prior to her termination, the most basic requirement for a retaliatory discharge claim under R.S. 23:1361.
2. The trial court manifestly erred by determining that the plaintiff proved by a preponderance of evidence that her termination resulted from the filing of her workers' compensation claim.
3. The trial court committed legal error by awarding interest on the attorney's fees and costs portion of the judgment.
Ms. Nicholson has answered the appeal, asserting a claim for additional attorney's fees incurred for defending the instant appeal.

Claim requirement
LSA-R.S. 23:1361(B) provides as follows:
No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provision of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
Emphasis added.
By its first assignment of error, TMSEL claims that Ms. Nicholson failed to prove a basic element of her claim for retaliatory discharge-i.e., that she was discharged for filing a workers' compensation claim. TMSEL seeks to equate the reference in LSA R.S. 23:1361(B) to an employee who has "asserted" a workers' compensation claim to an employee who has formally filed a claim. In the instant case, Ms. Nicholson did not formally file a claim for workers' compensation benefits until after her discharge by TMSEL. Thus, TMSEL asserts, Ms. Nicholson failed to prove, and *667 in fact cannot prove, her retaliatory discharge claim.
However, Ms. Nicholson testified at trial that she told Mr. Echols that she wanted to receive workers' compensation benefits at the time she reported the July 8, 1993, incident that resulted in injury to her knee. It is self-evident that Ms. Nicholson received medical benefits and compensation from the defendant for the accident of July 8, 1993. The defendant is self-insured, and retains experienced persons trained in reporting and adjusting personal injury and workers' compensation claims.
Although no Louisiana court has considered this issue, the United States Court for the Eastern District of Louisiana has found that "an employer who has knowledge of an employee's injury and the employee's intent to file a claim should not be able to escape liability under LSA-R.S. 23:1361 by firing the employee before he asserts the claim." Rholdon v. Bio-Medical Applications of Louisiana, Inc., 868 F.Supp. 179, 181 (E.D.La.1994). Because we agree with the rule enunciated in Rholdon, we find no merit in TMSEL's claim that Ms. Nicholson is incapable of proving her retaliatory discharge claim under LSA-R.S. 23:1361(B) simply because she had not filed a formal workers' compensation claim prior to her discharge by TMSEL. It is obvious that she asserted her workers' compensation entitlement at the time she reported the accident.

Preponderance of the evidence
By its second assignment of error, TMSEL asserts that Ms. Nicholson failed to carry her burden of proving by a preponderance of the evidence that her discharge resulted from her assertion of a workers' compensation claim. Because LSA-R.S. 23:1361(B) creates a civil cause of action, the normal burden of proof applies. Bowman v. F. Christiana & Co., 553 So.2d 971, 973-74 (La.App. 4 Cir.1989). Thus, the plaintiff is required to establish the necessary facts by a preponderance of the evidence, meaning that the evidence as a whole must show that the necessary facts are more probable than not. Id. Thus, the plaintiff bears the burden of proving more probably than not that he or she was discharged from employment because he or she asserted a claim for workers' compensation benefits. See Cahill v. Frank's Door and Building Supply Co., 577 So.2d 350, 352 (La.App. 1 Cir.), rev'd on other grounds, 590 So.2d 53 (La.1991).
The purpose of LSA-R.S. 23:1361 is "to prevent unjust dismissals and to allow employees to exercise their right to worker's compensation benefits without fear of retaliatory action by their employers." Cahill, 577 So.2d at 352, citing Ducote v. J.A. Jones Construction Co., 471 So.2d 704, 707 (La.1985), This court has found that LSA-R.S. 23:1361 is both remedial, because it provides a remedy for unfair discrimination by an employer, and penal. McDonald v. Television Management, Inc., 93-2493, p. 4 (La.App. 4 Cir. 9/29/94), 643 So.2d 802, 804, writ denied, 94-2642 (La.12/16/94), 648 So.2d 393. Because the statute is penal, it must be strictly construed. Id. at 5, 643 So.2d at 804. However, a trial court's finding that the plaintiff was discharged because he filed a workers' compensation claim is a finding of fact that should not be disturbed by an appellate court unless it is clearly wrong. Smith v. Holloway Sportswear, Inc., 97-698, p. 6 (La.App. 3 Cir. 12/17/97), 704 So.2d 420, 423, writ denied, 98-0182 (La.3/20/98), 715 So.2d 1214; citing Bowman, 553 So.2d at 974.
Generally, the rule established by LSA-R.S. 23:1361(B), prohibiting the discharge of an employee because he or she has asserted a workers' compensation *668 claim, is an exception to the "employment-at-will" doctrine applicable in Louisiana. La. C.C. art. 2747; McDonald, 93-2493 at 5, 643 So.2d at 804. The statute does not preclude an employer from discharging every employee who has asserted a claim for workers' compensation benefits; it simply precludes an employer from discharging an employee because he or she has asserted a workers' compensation claim. Thibodeaux v. C.W. & W. Contractors, 96-675, p. 4 (La.App. 3d Cir.12/11/96), 685 So.2d 461, 464. Louisiana courts have noted the difficulty faced by plaintiffs seeking to prove retaliatory discharge arising from the fact that employers "will rarely admit that the employee is being fired for filing a compensation claim." Cahill, 577 So.2d at 352, citing Moore v. McDermott, Inc., 494 So.2d 1159, 1162 (La.1986). See also Lewis v. Willamette Industries, Inc. 537 So.2d 780, 782 (La.App. 2 Cir.), writ denied, 540 So.2d 331 (La.1989).
Therefore, when considering a retaliatory discharge claim under LSA-R.S. 23:1361, the trial court is required "to ascertain the true reason for termination of the employee." McDonald, 93-2493 at 5, 643 So.2d at 805. See also Orr v. Bancroft Bag, Inc., 29,046, p. 2 (La.App.2d Cir.1/22/97), 687 So.2d 1068, 1070. An employer may not "simply invent a violation of a safety rule or stretch the facts of a situation out of context so that he has an excuse for firing an employee who has made a compensation claim." Cahill, 577 So.2d at 352. See also Lewis, 537 So.2d at 782. Accordingly, courts have granted recovery for wrongful discharge on a finding that an employer has presented a mere "guise" as his rationale for firing an employee. Cahill, 577 So.2d at 352. Nevertheless, a court may not "grant recovery within the scope, intent, and meaning of LSA-R.S. 23:1361" unless there is either direct record evidence that the employer fired the employee because he or she asserted a claim for benefits or a preponderance of record evidence proving that the employer's explanation is merely a guise for retaliatory discharge. Id.
Based on the above legal principles, we adopt the following rules to guide trial courts considering whether an employee is entitled to recover for retaliatory discharge under LSA-R.S. 23:1361. First, the plaintiff is initially required to establish by a preponderance of the evidence that he or she was discharged because he or she asserted a workers' compensation claim. As with any other fact, a plaintiff may meet that initial burden of proof in either of two ways: (1) by presenting direct evidence that the assertion of a workers' compensation claim was the reason for the discharge, or (2) by presenting circumstantial evidence sufficient to establish more probably than not that the reason for the discharge was the assertion of the workers' compensation claim. Under the rule enunciated in Cahill, a plaintiff who presents direct evidence that he or she was discharged because he or she filed a workers' compensation claim is clearly entitled to recovery. Id. Direct evidence that the employee was discharged because he or she asserted a workers' compensation claim would generally be proof that the employer admitted that reason for discharging the employee; the employer obviously cannot defend against such an admission. However, as has already been noted, an employer "will rarely admit that the employee is being fired for filing a compensation claim." Id. Thus, most plaintiffs filing suit under LSA-R.S. 23:1361 will be required to rely on circumstantial evidence.
When the plaintiff presents sufficient circumstantial evidence to prove more probably than not that he or she was discharged because he or she filed a workers' *669 compensation claim, the employer is then given an opportunity to explain its discharge of the plaintiff by giving another non-discriminatory reason for his or her discharge. If the employer presents sufficient evidence to prove more probably than not that the real reason for the employee's discharge was something other than the assertion of the workers' compensation claim, the plaintiff is precluded from recovery. However, if the trial court finds that, more probably than not, the employer's non-discriminatory explanation for the discharge is "merely a guise for retaliatory discharge," the employee is entitled to recovery. Id. See also Bailey v. Martin Brower Co., 94-1179, p. 8 (La.App. 1 Cir. 4/7/95), 658 So.2d 1299, 1303, in which the court found that the discharged employee was entitled to recovery under LSA-R.S. 23:1361 because the trial court "permissibly rejected" the only non-discriminatory reason offered by the employer to support the employee's discharge. Accordingly, an employer who presents an explanation other than the employee's assertion of a workers' compensation claim to explain the employee's discharge is required to prove that explanation by a preponderance of the evidence.
In the instant case, the trial court found that Ms. Nicholson's testimony and evidence was sufficient to meet her initial burden of proof. Of course, all of the evidence presented by Ms. Nicholson to meet her initial burden of proof was circumstantial. Ms. Nicholson testified that she told Mr. Echols that she wanted to receive workers' compensation benefits when she reported the injury to Mr. Echols, but that Mr. Echols told her that the injury was not compensable because she did not fall. Ms. Nicholson further testified that when she delivered her "Return to Work" slip to Ms. Thornton, Ms. Thornton told her that Mr. Echols would call her. Mr. Echols admitted that he never even attempted to call Ms. Nicholson when she did not report to his office on May 26, 1994. Instead, he simply terminated her employment effective May 27, 1994. Ms. Nicholson also testified that she attempted to call Mr. Echols at least three times after she left the "Return to Work" slip with Ms. Thornton, but Mr. Echols failed to return any of her calls.
Moreover, the trial court noted Ms. Nicholson's testimony that Mr. Echols had previously attempted to terminate her employment after her return to work following her assertion of a workers' compensation claim relative to her shoulder injury in September of 1991. That decision was overturned following a grievance review pursuant to TMSEL's contract with ATU. However, at that time, Mr. Echols had initially denied Ms. Nicholson the opportunity to pursue her grievance, citing the fact that it was not filed within five days of the action as required by the union contract. Then, when Mr. Echols attempted to discharge Ms. Nicholson the second time in 1994, he waited five days following the effective date of the decision to notify TMSEL's Human Resources Department; Ms. Nicholson was never officially notified of her discharge. When asked how Ms. Nicholson could have filed a grievance within five days of her second discharge, given the fact that Mr. Echols did not report that discharge even to the Human Resource Department during that period, Mr. Echols admitted that he did not have an answer to the question.
Moreover, we note that Ms. Nicholson's claim that she was discharged because she filed a workers' compensation claim was corroborated by the testimony of Milton Cross, a previous TMSEL employee. Mr. Cross testified that he suffered an on-the-job injury while employed by TMSEL, after which he was discharged. Mr. Cross *670 said that he reported both the injury and his desire to seek workers' compensation benefits to Mr. Echols. Mr. Echols told him, Mr. Cross testified, that the company was trying to "wean" the employees from receiving workers' compensation and that he should "think" about whether he wanted to file a claim. Mr. Cross said that he was discharged when he decided to file a claim despite that warning. He testified that he believed that he was discharged because he asserted a workers' compensation claim; however, Mr. Cross apparently never sought recovery pursuant to LSA-R.S. 23:1361. Accordingly, the record contains ample evidence to support the trial court's finding that Ms. Nicholson carried her initial burden of proving that she was discharged because she asserted a workers' compensation claim.
Once the trial court found that Ms. Nicholson meet her initial burden of proving by a preponderance of the evidence that she was discharged because she asserted a workers' compensation claim, TMSEL sought to explain its discharge of Ms. Nicholson by giving a non-discriminatory reason for her discharge. Mr. Echols testified that Ms. Nicholson was discharged for "insubordination" pursuant to the TMSEL employee handbook because she failed to follow the instructions of the run dispatch clerk, Mr. Johnson. However, Mr. Johnson testified that he never told Ms. Nicholson to report to Mr. Echols on May 26, 1994. Moreover, Mr. Johnson testified that he worked the morning shift in 1994, while Ms. Nicholson said that she delivered the "Return to Work" slip in the afternoon or evening. When asked to explain that inconsistency, Mr. Echols was again unable to answer. The trial court in this case found that the record evidence did not support TMSEL's explanation for Ms. Nicholson's discharge. Moreover, at oral argument before this court, the attorney for TMSEL admitted that the testimony of Mr. Echols, Ms. Thornton, and Mr. Johnson was inconsistent. Thus, the trial court had sufficient grounds to find that TMSEL's explanation was a mere guise for terminating Ms. Nicholson and that the true reason for her discharge was the fact that she had asserted a workers' compensation claim. Because the trial court "permissibly rejected" TMSEL's only offered justification for terminating Ms. Nicholson's employment, "we can only find that the court correctly ruled that [Ms. Nicholson] was fired in retaliation for filing a worker's compensation claim in violation of La. R.S. 23:1361B." Bailey, 94-1179 at 8, 658 So.2d at 1303.
TMSEL claims however that it should not be required to prove that Ms. Nicholson was in fact "insubordinate" because she failed to follow Mr. Johnson's order to report to work on May 26, 1994. TMSEL claims that the critical issue is Mr. Echols' state of mind-i.e., if Mr. Echols reasonably believed that Ms. Nicholson was insubordinate, it has properly proven a non-discriminatory reason for her discharge. However, we agree with the reasoning stated by the Bailey court when it rejected the "state-of-mind" argument advanced by TMSEL in this case. 94-1179, 658 So.2d 1299. In Bailey, the employer claimed that the plaintiff was discharged, not because he asserted a worker's compensation claim, but because he asserted a fraudulent worker's compensation claim. Id. However, the court entered judgment in favor of the plaintiff, finding that the employer had failed to offer any evidence that the plaintiffs workers' compensation claim was indeed fraudulent. Id. Once the employer's explanation was rejected, the court found that the plaintiff was entitled to recovery.
As the record in this case contains sufficient evidence to support the trial court's rejection of the employer's explanation for *671 Ms. Nicholson's discharge, we find no manifest error in the trial court's decision to award Ms. Nicholson recovery for retaliatory discharge. Accordingly, the judgment in favor of Ms. Nicholson is affirmed.

Interest
By its third and final assignment of error, TMSEL asserts that the trial court committed legal error by awarding interest from the date of judicial demand on the attorney's fees and costs portion of the judgment in favor of Ms. Nicholson. In support of the trial court's decision to award interest on the attorney's fees, Ms. Nicholson cites Daney v. Haynes, 630 So.2d 949, 955 (La.App. 4 Cir.1993), in which this court affirmed a trial court decision awarding pre-judgment interest on attorney's fees in a case involving LSA-R.S. 22:658, which, like LSA-R.S. 23:1361, is a penalty provision. Thus, Ms. Nicholson claims, the trial court properly awarded interest on the attorney's fees in this case.
Our extensive research of Louisiana jurisprudence reveals that the rules applied by courts to the attorney fee interest issue are inconsistent and confusing. See, e.g., the following opinions from this court awarding judicial interest in various types of cases from the date specified: Howell v. American Casualty Co., 96-0694 (La.App. 4 Cir. 3/19/97), 691 So.2d 715, writs denied, 97-1329, 99-1379 (La.9/5/97), 700 So.2d 512, 515, 97-1426 (La.9/5/97), 700 So.2d 518 (date of judgment); Sanderford v. Lombard, 96-1171 (La.App. 4 Cir. 12/11/96), 685 So.2d 1162 (date of judicial demand); Hidalgo v. Old Hickory Insurance Co., 630 So.2d 252, 257 (La.App. 4 Cir.1993), writs denied, 94-0381, 94-0399, (La.3/25/94), 635 So.2d 240 (date of judgment); Coulton v. Levitz Furniture, Corp., 391 So.2d 80 (La. App. 4 Cir.1980) (date of judicial demand). See also, e.g., the following cases from other Louisiana appellate courts in various type of cases awarding judicial interest from the date specified: L & A Contracting Co. v. Ram Industrial Coatings, Inc., 99-0354 (La.App. 1 Cir. 6/23/00), 762 So.2d 1223, writ denied, 2000-2232 (La.11/13/00), 775 So.2d 438 (date of judgment); East-Garrett v. Greyhound Bus Lines, 99-421 (La.App. 3 Cir. 11/03/99), 746 So.2d 715 (date of judgment); Clifton v. Rapides Regional Medical Center, 96-509 (La.App. 3 Cir. 10/9/96), 689 So.2d 471 (date of judicial demand); Williams v. Louisiana Indemnity Co., 26,887 (La.App. 2 Cir. 6/21/95), 658 So.2d 739 (date of judgment); Poche v. Bayliner Marine Corp., 93-721 (La.App. 5 Cir. 2/9/94), 632 So.2d 1170 (date of judgment).
In Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382, the Louisiana Supreme Court expressly held that interest on attorney's fees begins to run only on the date of judgment, not from date of judicial demand. The Supreme court framed the issue before it as follows: "whether interest on an award of attorney's fees and penalties in a worker's compensation case is to be calculated from the date of judicial demand or from the date of the hearing officer's award." Id. at 2, 696 So.2d at 1383. The worker's compensation provision involved in Sharbono was LSA-R.S. 23:1201.3, relative to damages recoverable by an employee when an employer fails to timely pay compensation under the terms of an award. Like LSA-R.S. 23:1361, which is at interest in this case, LSA-R.S. 23:1201.3 provides for penalties and attorney's fees, but does not expressly address interest. Id. at 5, 696 So.2d at 1385. Following a lengthy discussion of attorney's fees in general, as well as "an examination of Louisiana's attorney fee statutes," Id. at 8, 696 So.2d at 1387, the court noted that damages ex delicto "are conceptually `due' throughout the pendency of the suit from *672 the time the plaintiff makes judicial demand pursuant to R.S. 13:4203." Id. at 9, 696 So.2d at 1388. However, the court distinguished attorney fee awards, stating as follows:
Not so with awards of attorney's fees, which are "due," if at all, only on the date of judgment. It is important to note that a victorious plaintiff who has suffered compensable harm is of necessity "due" some amount of damages, to be determined by the trier of fact. However, that same victorious, damaged party is not automatically due any amount of attorney's fees. Rather, despite the party's victory, the trier of fact may decide that attorney's fees, which are available only by statute or contract, are not warranted.
* * * * * *
Because attorney's fees awards depend for their very existence upon a discretionary finding of the trier of fact, any amount of attorney's fees awarded to the victor is "due" only from the date of judgment. Prior to that time, the victor was not entitled to those funds. Because the losing party did not deprive the victor of the use of funds to which the victor was entitled, no prejudgment interest may be calculated on the award of attorney's fees. Rather, post-judgment interest on that amount may be calculated only from the date the debt came into being and thus became due to the date it is paid. To hold otherwise would be to unfairly compensate the victor, and penalize the loser, for a deprivation which never took place.
Id. at 9-10, 696 So.2d at 1388-89. Applying the rule established by the Louisiana Supreme Court in Sharbono, we find that the trial court erred in awarding judicial interest on the attorney's fees portion of the judgment from date of judicial demand.
Likewise, the trial court erred in awarding judicial interest on the court costs portion of the judgment from the date of judicial demand. It is well-settled that "[i]n Louisiana, interest on an award of court costs begins to run on the date of the judgment fixing the costs." Jackson v. CSX Transportation, Inc., 97-0109 (La. App. 4 Cir. 12/23/97), 712 So.2d 514, 523-24, writ denied, 98-0417, 98-0418 (La.4/3/98), 717 So.2d 1130, cert. denied, 525 U.S. 870, 119 S.Ct. 166, 142 L.Ed.2d 136 (1998), citing Cajun Electric v. Owens-Corning Fiberglass, 616 So.2d 645, 647 (La.1993). Accordingly, we amend the trial court award to provide for judicial interest only from the date of judgment on the attorney's fees and court costs awarded to Ms. Nicholson.

Additional attorney's fees
Ms. Nicholson answered the instant appeal seeking additional attorney's fees for opposing this appeal. Accordingly, we amend the judgment to award Ms. Nicholson an additional $2,000 for attorney's fees incurred to oppose the instant appeal. See Daney, 630 So.2d at 955.

Conclusion
The trial court judgment is amended to award judicial interest on the attorney's fees and court costs awarded Ms. Nicholson only from the date of judgment and to award Ms. Nicholson an additional $2,000 attorney's fees for work performed on appeal. In all other respects, the trial court judgment is affirmed.
AMENDED; AFFIRMED AS AMENDED.
TOBIAS, J., concurs.
TOBIAS, J., concurring.
I agree with the majority's opinion, and only concur to discuss my concerns relating to the issue of judicial interest.
*673 The majority correctly summarizes Louisiana jurisprudence on judicial interest. Judicial interest accrues on the following from date of judicial demand: (a) general damages; (b) special damages; and (c) penalties. Judicial interest accrues on attorney's fees and court costs from the date of judgment specifically determining the dollar amount due.
Although the rule of this circuit holds that judicial interest accrues on all costs of court from date of judgment quantifying the costs (see, Jackson v. CSX Transportation, Inc., 97-0109 (La.App. 4 Cir. 12/23/97), 712 So.2d 514, 523-24), I find that the rule was derived from an incorrect reading of Cajun Electric v. Owens-Corning Fiberglass, 616 So.2d 645, 647 (La. 1993). Cajun Electric merely holds that judicial interest accrues on expert witness fees from the date of the judgment determining the dollar amount of the fee to be taxed as costs. Expert witness fees are similar to attorney's fees. The analysis of Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382 is consistent with Cajun Electric.
I find that judicial interest on court costs (monies paid to the sheriff and clerk of court) should accrue from the date that they are paid by the party paying them because they are a liquidated sum, i.e., a sum certain fixed in accordance with law by a public body or official. Therefore, I would tax judicial interest on those sums retroactive to the date of judicial demand or, alternatively, retroactive to the date that the sheriff or clerk of court actually receives them from a party. When a party pays court costs, the party loses control of the funds paid. The party thus suffers damage from the date of the payment and should be compensated in accordance with La. R.S. 13:4203. As to other costs of court (La. R.S. 13:4533), an item by item analysis of each cost is appropriate to determine from what date judicial interest should accruewhether from date of judicial demand, date of payment by a party, or date of judgment.