923 So.2d 177 (2006)
Bridget KING
v.
DIALYSIS CLINIC INCORPORATED.
No. 2004-CA-2116.
Court of Appeal of Louisiana, Fourth Circuit.
January 4, 2006.
*178 Francesco J. Guastella, Frischhertz & Associates, New Orleans, LA, for Plaintiff/Appellant.
David M. Whitaker, Lemle & Kelleher, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS JR., Judge LEON A. CANNIZZARO JR.)
TERRI F. LOVE, Judge.
This appeal arises from a Motion for Summary Judgment filed by Dialysis Clinic, Inc. alleging that Bridgette King was terminated for poor performance and not in retaliation for filing a workers' compensation claim. The trial court granted the Motion for Summary Judgment and this appeal ensued. For the reasons below, we affirm the judgment of the trial court.

STATEMENT OF THE CASE AND PROCEDURAL HISTORY
Appellant, Bridgette King ("Ms.King"), was hired by Tulane Hospital as a Licensed Practical Nurse for its dialysis unit in September 1992. In December of that year, Dialysis Clinic, Inc. ("DCI") acquired the unit and Ms. King was given full-time employment. DCI is a non-profit corporation that provides dialysis treatment to patients with end stage renal disease. DCI operates dialysis clinics across the U.S., including five in the New Orleans area.
Ms. King worked for DCI as a Dialysis Nurse from approximately December 1992 until June 1998, when she suffered an on-the-job knee injury as the result of a slip and fall accident. She had arthroscopic knee surgery in October 1998 and DCI's workers' compensation carrier covered the expenses of the procedure. Ms. King also received temporary total disability benefits during her medical leave of absence. Ms. *179 King returned to work on November 18, 1998 and was offered a position as a patient data entry clerk. In April 1999, she assumed the position of interim Front Office Supervisor and the position became permanent at some point in 2000.[1] As Front Office Supervisor, Ms. King was responsible for managing front office employees, overseeing employee payroll, data entry of patient information and preparing designated reports such as patient flow sheets and billing reports.
Ms. King reported to DCI Administrator, Stuart Redpath ("Mr. Redpath"), who was hired in September 1999. In May 2000, Mr. Redpath evaluated Ms. King's 1998/1999 job performances as Front Office Supervisor. She received a favorable evaluation as well as a bonus. Mr. Redpath noted that the assessment was based on his limited, eight-month period as Ms. King's supervisor. During the years 2000 and 2001, Ms. King had discussions with Mr. Redpath about her job performance, which included conversations regarding her supervision of the front office desk and problems with data entry and the flow sheets.
In March 2001, Mr. Redpath prepared an evaluation of Ms. King's 1999/2000 job performances. Ms. King's quality of work was rated, as "needs improvement" and he noted there had been repeated problems with numerous front office functions, including data entry, maintenance of employee attendance and personnel records, petty cash management and staff schedules.
Ms. King underwent exploratory arthroscopic knee surgery on January 10, 2001. She returned to work at the end of January and requested modification of her work schedule to accommodate her physical therapy regiment. The request was approved. On February 6, 2001, Mr. Redpath issued a written warning to Ms. King regarding her insufficient attention to her job duties. It was noted that Ms. King's failure to improve could result in further discipline, including termination. Ms. King signed the warning and did not dispute the accuracy of the report. Ms. King continued to have problems with her job performance throughout the year and received e-mails from DCI's West Bank billing department regarding delays in responses for patient records and deficiencies in patients' medical records.
On March 12, 2001, Ms. King requested a two-month medical leave of absence for her third knee surgery, which was approved by Mr. Redpath. Ms. King returned to work on May 15, 2001, with a work restriction of six hours per day, along with limitations on certain physical activities. Ms. King's work hours were further reduced to four hours per day on May 22, 2001. Ms. King remained on a four-hour work restriction until July 17, 2001, when she returned to six hours per day. DCI covered the expenses of Ms. King's medical treatment and paid supplemental benefits based on her inability to work on a full-time basis.
In an internal memorandum dated June 19, 2001, Mr. Redpath noted a list of deficiencies with Ms. King's supervision of the front office. Mr. Redpath requested an action plan to be completed by June 29, 2001 to address the problems. Ms. King complied with the order and gave specific steps that she would take to address the problems. Mr. Redpath also explained that the Front Office Supervisor position was a full-time position and asked Ms. King to provide her physician with a copy of her job duties in order to determine if she could return on a full-time basis. On *180 September 25, 2001, Ms. King's treating physician certified that she was able to perform her job duties on a full-time, eight-hour day basis. However, several e-mails continued to note Ms. King's job deficiencies after she was certified to return to work on a full-time basis.
On December 21, 2001, Mr. Redpath issued a final warning to Ms. King regarding her job deficiencies. The report indicated repeated problems with flow sheet errors that could expose the clinic to potential charges of Medicare billing fraud and problems with petty cash not being properly reconciled. Mr. Redpath noted again that failure to improve could lead to further disciplinary action, including termination. Ms. King signed the evaluation and did not dispute its accuracy.
Ms. King received various e-mails between December 2001 and January 2002 concerning her job performance. For example, an e-mail dated January 11, 2002 from Mr. Redpath noted that the number of data entry errors in the patient flow sheets continued to remain high and could expose the clinic to high financial loss and allegations of Medicare fraud. On January 23, 2002, Ms. King sent an e-mail to Mr. Redpath indicating that her physician had decreased her work hours from eight to six hours per day.
On January 29, 2002, DCI's accounting manager advised Mr. Redpath that they had only received patient flow sheets through January 17, 2002 from DCI's Tulane Clinic and this created a serious burden on DCI's accounts receivable department. Mr. Redpath met with Ms. King on that date and she was terminated.
Ms. King sought unemployment benefits after she was discharged. She was originally denied because the Agency determined that she was unable to meet the employer's requirements. Ms. King appealed the Administrative Law Judge's finding that the evidence presented did not demonstrate that she intentionally neglected any of her duties. The Administrative Law Judge ("ALJ") also stated that it was not a coincidence that Ms. King was discharged just before she was to file a workers' compensation claim for lost time due to a job related injury.
Ms. King filed a Petition for Damages on January 29, 2003, alleging that the termination of her employment on January 29, 2002, gave rise to a claim for workers' compensation retaliatory discharge pursuant to La. R.S. 23:1361. DCI filed a Motion for Summary Judgment arguing that the undisputed facts establish that Ms. King was terminated due to a long history of well-documented, substandard job performance and she failed to present factual evidence showing DCI's termination was motivated by unlawful retaliation. The trial court granted DCI's Motion for Summary Judgment and Ms. King's appeal followed.

STANDARD OF REVIEW
In determining whether the trial court erred in granting DCI's Motion for Summary Judgment, we must discern whether genuine issues of material fact exist. The standard for reviewing the trial court's grant or denial of a Motion for Summary Judgment requires de novo review. Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings & Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993).
Further, the court must assume that all of the affiants are credible. Inasmuch as summary judgments deprive the litigants of the chance to present their case to a jury, they should only be granted when the evidence shows that there is no *181 genuine issue of material fact in dispute. King v. Career Training Specialists, Inc. 35,050 (La.App. 2 Cir. 9/26/01), 795 So.2d 1223. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the pertinent theory of recovery. Even though summary judgment is now favored it is not a substitute for trial on the merits in a retaliatory discharge case because it is often inappropriate for judicial determination of subjective facts, such as motive, intent, good faith or knowledge that call for credibility evaluations and the weighing of the testimony. Chivleatto v. Sportsman's Cove, Inc., 05-136, p. 6 (La.App. 5 Cir. 6/28/05), 907 So.2d 815, 819.

LAW AND ANALYSIS
La. R.S 23:1361(b) provides:
No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
(Emphasis added).
In a Motion for Summary Judgment, the initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C. P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. art. 966 and 967.
In the present case, once DCI established to the trial court that there was an absence of factual support for this essential element, namely that the reason for the discharge of Ms. King was due to the filing of her worker's compensation claim, it was Ms. King's duty to produce factual support to demonstrate that she would be able to satisfy her burden of proof at trial[2], namely that the reason for her discharge was the filing of her workers' compensation claim. In her brief, Ms. King conceded that it is undisputed that she received evaluations from Mr. Redpath concerning her job deficiencies. However, *182 she argued that even though her reviews were deemed "problematic" DCI did not fire her in the past because of her job performance. Further, Ms. King asserted she was not discharged until after her January 22, 2002 doctor's visit when her work hours were reduced. Ms. King also argued that she planned on filing for additional workers' compensation benefits after her January 22, 2002 doctor's visit.[3]
The abovementioned arguments are the only evidence Ms. King offered in opposition to the Motion for Summary Judgment. Thus, a careful review of the record establishes that Ms. King failed to present evidence showing she was terminated based upon her filing of a workers' compensation claim. Therefore, the trial court was correct in finding no genuine issues of material fact exist.
Moreover, an employer is not precluded from terminating an employee who has filed a claim; he is precluded from firing the employee because of the claim. An employer can defend against a claim by showing that the employee was fired for a reason other than the claim. Turner v. Dameron-Pierson Company, Ltd, 95-0143, p. 5 (La.App. 4 Cir. 11/16/95), 664 So.2d 739, 741. In the instant case, DCI offered an abundance of evidence showing that Ms. King's firing was related to her substandard job performance.
Lastly, Ms. King relied on the ALJ's ruling that her termination was not due to her job performance. However, it is important to note that La. R.S. 23:1636 provides:
[N]o findings of fact or law, judgment, opinion, conclusion or final order made by an unemployment compensation hearing officer, administrative law judge, or any person with the authority to make findings of fact or law in any action or proceeding pursuant to the administration of this Chapter shall be conclusive or binding in any separate or subsequent action or proceeding. Said determinations shall not be used as conclusive evidence in any separate or subsequent action or proceeding between an individual and his or her present or prior employer brought before ... [a] judge of the state of Louisiana.
Accordingly, the ALJ's ruling is not binding on this Court.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
TOBIAS, J., Concurs and Assigns Reasons.
TOBIAS, J., concurring and assigning reasons.
I respectfully concur. A de novo review of the record discloses that the trial court did not err as a matter of law.
NOTES
[1] The record is not clear on the exact date Ms. King's position became permanent.
[2] In order to recover for retaliatory discharge under the statute, Ms. King must prove by a preponderance of the evidence that she was discharged because she asserted a workers' compensation claim, either by direct evidence or circumstantial evidence sufficient to establish more probably than not that the reason for the discharge was the workers' compensation claim. Chivleatto, 05-136 at p. 5, 907 So.2d at 819. Normally, direct evidence that the employee was discharged, because she asserted a worker's compensation claim, is proof that the employer admitted that reason for firing the employee. Nicholson v. Transit Management of Southeast Louisiana, 00-0706, p. 9 (La.App. 4 Cir. 2/14/01), 781 So.2d 661, 668. Most plaintiffs rely on circumstantial evidence to prove more probably than not that they were discharged because of the filing of a workers' compensation claim as an employer rarely admits that the employee was fired for filing a compensation claim. Id. If the employer gives a non-discriminatory reason for the discharge and presents sufficient evidence to prove more probably than not that the true reason for the employee's discharge was other than the workers' compensation claim then the plaintiff is not allowed to recover. Id. Once the employer offers another reason for the firing, the trial court must determine the true reason for the discharge based on the facts presented. Chivleatto, 05-136 at p. 5-6, 907 So.2d at 819. However, if the trial court finds that it is more probable than not that the employer's non-discriminatory reason is just a guise for retaliatory discharge then the employee is entitled to recover.
[3] This last argument is misplaced because Ms. King did not inform anyone of her intention to claim additional workers' compensation benefits.